Next case is Pennsylvania International Academy versus Fort Leboeuf School District. Mr. Byron. Right. Good morning. May it please the court. Judge Harden, we requested that the argument be divided and my colleague Alex Cox will handle issues related to the cross-appeal. I have requested, that leaves me with 11 minutes, I've requested two minutes for rebuttal. Correct. My portion. Thank you. The purpose of Title VIII and its implementing regulations clearly evidence congressional intent to ensure that F-1 visa holders bear all the cost of their educational pursuits. F-1 visa holders represent a world... Wait a second. They go to a private school, they've got to pay all the costs of the private school? Well, there is a, that's one of the issues in the case, obviously, and I would presume that Congress would not presume to negotiate whatever terms that a particular F-1 visa holder might have, negotiate with another private party. I would think that Congress, in particular, in Section 11... You said that F-1 visa holders pay all of their educational expenses. Well, they do not rely on public resources to do so, I apologize, I may have misspoken. That's an important distinction, is it not? It is. They don't have a right to public bus transportation. That's part of your argument, right? It is. I think... All right. And Pennsylvania, as a matter of legislative grace, has said that they do get a free bus ride. So if you don't like the fact that they get a free bus ride, shouldn't you go talk to the Pennsylvania General Assembly? Well, we could do that, Your Honor, but I think the question here is whether this, the busing statute presents an obstacle to the purpose that Congress has enumerated through respect to F-1 visa holders. With the F-1 visa holder, we're talking about a very narrow segment of individuals who are affected by immigration laws. The purpose for their being here in the first place is really to pursue educational pursuits. And so that educational component, I think, is a thread that runs through this analysis and I think is what renders them susceptible to special treatment in so far as how Congress views their reliance on public resources to pursue that educational purpose. But you've, in the brief, you identify the public charge provision and then explicitly say, we're not saying they're public charges. You acknowledge, as Judge Bonaski was alluding to, the reimbursement requirement doesn't apply to people like these students who are in private schools. You say to another provision of 1184 that talks about the consequence of someone who switches from private school to public school, and you can see that doesn't apply. There's immigration guidance that says non-cash benefits don't count towards public charge status and by implication, lack of self-sufficiency. So what immigration provision operates at all as a conflicting matter compliant with the busing statute? Well, I think we brought up the public charge standard because we think that evidence is Congress's intent. But you've indicated they don't qualify for that. They're not public charges. Correct. We're not making that argument, but it's certainly indicative of Congress's intent to curtail and to limit their dependency on public resources. And so within 1184, I think the test is that we are to ascertain what Congress's intention is. We don't have to prove that there is an actual conflict. I think there is an argument there that there is an actual conflict. It's structured a little differently because typically it's more of a linear preemption where one party does something and that either conflicts with the federal law and the state law. Whereas here, there's sort of a binary structure where the F-1 visa holders' compliance with Title VIII conflicts with the district's provision of it. But we don't have to find that there is an actual conflict because we can look to the obstacle analysis, which is where I think that provides us with a more clear analysis of this issue. If you're going to embrace obstacle, all the immigration statutes that were identified in your brief are not applicable, don't provide an obstacle in any way. So I'm not sure how the immigration law imposes an obstacle in some way. So if the analysis stops at the plain text of the statutes themselves, there is no express provision that would require the students in this case to pay for the busing if they go to public school. But if you look at the statutes that we've cited, 1184 in particular, it is clear to me that they're being treated differently. First of all, there's a prepayment obligation. So first of all, you know, there is... Only for students who go to public school. Correct, but... The private school students only have to show financial wherewithal, they don't have any payment obligation. So Congress distinguished, for whatever reason, the private and the public school students. Right. I don't think it's for whatever reason, though. I think Congress could very easily say, we're not going to stick our nose in negotiations between an F-1 visa applicant and a private entity, however, we are going to make sure that to the extent they're going to draw on... Well, that they might be able to draw on public resources to attend a public high school, that they prepay that in full. And the language that Congress used in that section 1184, I think is quite compelling. Congress could have chosen to simply say the cost or the total cost. But what Congress said in that section is the full, unsubsidized, per capita cost of providing the education. For public school students. For public school students, correct. But what you can infer from that, I think, fairly, which is what we're really trying to do here, is that Congress wanted to leave no room for negotiation. That students who are going to come here as F-1 visa holders to pursue education shall not in any way rely on public resources for that educational pursuit. So if you had an F-1 visa holder going to your school district's public school, would they get a light on them on the bill that says, here's your bill for the bus transportation that they have to reimburse? I don't know that they'd get that, but the transportation cost is certainly calculated as part of the education cost for that student. So you can't say whether or not they had to reimburse for that? There's nothing in the record that speaks to that? There's nothing in the record that speaks to that. That is part of the cost of education. If a district is going to provide that service to its students, then that is going to be rolled into all of the other costs and then divided up on a per capita basis. So again, I think the language that Congress utilized in 1184M is quite telling as to its purpose and its objective that these individuals are certainly welcome to come here and study, but they should not be able to do so in a way that relies on public resources for that educational component. How do you square that with the guidance from the immigration authorities that say the receiving non-cash benefits, like school lunch, doesn't count towards public charge status and by implication doesn't make them not self-sufficient? Isn't this a non-cash benefit that falls in the same bucket and therefore wouldn't count for whether a public school or a private school student? No, I think it falls again in that thread of an educational component. This is why they're coming here. This is why they're being granted access. I think it's clear that Congress intends that if you're going to do that, whatever relates to your pursuit of that educational goal is going to be taken care of either on your own or through private organization. Some educators would argue that making sure a kid has breakfast and lunch is tied to the educational process, so I'm not sure how that falls different. I wouldn't quarrel with that, but I can see how providing food and nourishment to someone who otherwise does not have access to it can be distinguished from someone who might have means to pay for their own transportation to attend a private school, but is simply going to rely on the state statute to do so. If we really get through the preemption issue and we decide that the busing statute entitles these private school students to arrive, what happens next? The district now has to find the money to pay for that. There's no ongoing controversy or anything, it's just ... I guess what I'm asking in a roundabout way is, is there a need for injunction here, a mandatory injunction, or is there any effort on the school board's part to defy an order of this court if we hold that your preemption argument is unpersuasive? I'm not aware of any intention to do that. Judge Schwab's order was clear prior to Judge Schwab's guidance on this issue. It was really sort of an uncharted, to borrow from Your Honor's grace, area of the law. I think now, if you were to fight against us on the preemption issue, I believe the parties are working right now together to provide for that in a way that's consistent with the order. I don't think you have a case for controversy that would require injunction. So the injunction issue becomes moot? I believe so, yes I do, but that's ... Mr. Cox would be here to address that aspect of the argument. I'm out of time. There was one point I wanted to make that's not really clear in the briefs. This would be under the regulatory scheme. We cite to the ACFR 214.2, and that was the regulatory section that deals with the I-20 forms. And in that process, taking our example here, the school to which the applicant wants to go, and ensuring that there is financial responsibility, it's entirely conceivable that a prospective F-1 visa holder would locate a school in Pennsylvania, say, hey, well there's a busing statute here, incorporate that benefit that is there into the assumptions that he's building as to whether or not he can afford or has the financial responsibility to pursue his education in a private school. That private school has no dog in that fight as to who's funding for the transportation. If he identifies that as a potential source of support, the district is not a party to that process. And I think the effect of that would be, you would have an I-20 form that has inflating or perhaps misstating that particular individual's financial responsibility, and potentially I think you get into undermining the purpose that Congress clearly set forth, I think, in 1184M, which is that they not be dependent upon public resources. So I think the way that we... That's something the regulators should vet at the time the application is filed. Possibly. Possibly. But I think 1184M, I think you have ample support for the objectives that Congress is seeking to achieve, and I think this presents an obstacle to that. And then as to this, the I-20 form process, I think you have a potential for undermining the process that Congress has put in place as well. Okay. Thank you very much, Mr. Baumann. We'll hear you on rebuttal. Mr. Cox? I guess I should have asked you the pragmatic question I asked Mr. Baumann, and I apologize for that. Could you just respond to that before... Yes. Thank you, Mr. Baumann. May it please the court. I'm co-counsel for the school district and I'll be addressing the issues raised by the cross appeal. I'd like to reserve one minute for rebuttal. We can all hear rebuttal from one side. Okay. That's fine. The scope of the cross appeal is essentially what additional remedies and relief is the academy entitled to if this court agrees with Judge Schwab on a preemption issue. The parties stipulated in the course of converting our motion to dismiss to a motion for summary judgment, they stipulated that in the event that the academy prevails, they're being entitled to $29,000 in damages. That's a subrogation claim though, right? That's a subrogation claim. You're correct. So we have two other claims that the district court judge declined to opine on, the mandatory injunction count, which is really a remedy, and the 1983 claim.  Correct. We don't have to send it back. I don't know what Judge Schwab's rationale was for doing that. I suspect it was a stipulation because we had said, if you agree with the academy, then they get $29,000. And so we declined to opine on those. But your honors, this court can appeal for or can affirm for any reason supported by the record. And I think on both the section 1983 claim and on the injunction claim, there is reason to affirm the court's refusal to grant relief under those two. Thank you. I'll start with the injunction since Judge Hardiman, you asked about that. It is the rule in Pennsylvania, it's the rule in federal court, that a permanent injunction does not automatically follow a finding of a violation. You must also satisfy the applicable requirements. And that includes that there not be another remedy at law that's adequate. Here, the parties stipulated the $29,000 in damages. So is the school district providing busing now for the students? Yes, currently the school district is reimbursing the academy for the busing. There's nothing in the record that suggests the school district would not be providing that. The cost to the academy is much less than what the school district was going to charge on a per capita basis, isn't it? Yes, I believe that the academy was able to secure a transportation at a lower cost than the school district. The school district has a lot of other regulations they have to abide by when they provide transportation, which makes it more expensive. But, Your Honor, those are the reasons why a court can affirm their refusal. What about the 1983? Why is that moot? Well, yes, starting with what I mentioned on the stipulation, I believe that it's a fair interpretation of that stipulation that the parties agreed that the entitlement would be $29,000 in damages and nothing else. And so I think that renders any other relief that they could seek under 1983 moot because the parties agreed to what the damages would be. So are you suggesting that from this record we should take from that stipulation there's been a stipulation that there's a property interest in busing and a failure to comply with due process? No, not at all, Your Honor. I'm suggesting that the parties agreed that any relief would be $29,000 and that the Academy has given up its right to seek additional relief. Including attorney's fees? Including attorney's fees. Where would we get that from the stipulation? The stipulation seemed to be tied to the actual expense incurred by the Academy. That's correct, Your Honor. I think it's implied by it. But the one thing I would add, a couple things on 1983. First, we laid this out in our briefs, but I think this case is a textbook example of a party abandoning a claim. We filed a motion to dismiss, raising issues with their pleading of that claim. They didn't respond to that. I thought they just replied. There was additional briefing beyond the initial briefing. After they abandoned it, they tried to resuscitate it, but they have not presented a case that says that allows you to resuscitate that sort of claim. I see my time is up. I just would like to make one additional point, if Your Honor so might. And that is that even if the court agrees that the Academy is entitled to some relief on an injunction and the 1983 claim, the proper remedy is not reversal and ordering the district court to enter that judgment. It would be vacating it and allowing us a chance to dispute the facts. There's been no opportunity for an answer. The Academy in its motion for summary judgment didn't supply a statement of material facts that we are allowed to dispute. There's been no discovery. And so on the 1983 claim, there's been no opportunity for us to dispute the fact that there would be a procedural due process. And I think that ties back to the stipulation, and that's that the parties agree that there would be $29,000 in damages. But to the extent you can read that as saying other claims still survive, we as a school district are entitled to actually litigate those claims, and we have not had the opportunity to do that. With the presider's permission, I'm going to do one follow-up. Judge Hardiman had asked your colleague a question that we should have, and I asked the same question to your colleague, and I apologize, but I'd like to direct to you. Are you able to represent that if this Court were to conclude the busing statute is not preempted, that busing will not be withheld on those grounds, and therefore an injunction is not necessary? Yes, absolutely not. The school district, as I mentioned, is currently paying the Academy for the transportation. There's no past history of violations or refusal to follow court orders. There's no reason they would not comply with the law if this Court interprets the law that way.  Thank you, Your Honors. Thank you, Mr. Cox. Mr. Pendleton. Mr. Pendleton, would you mind starting where we left off with Judge Schwartz's question and Mr. Cox's? You mean the injunction? Yeah, I mean, is there really some risk here that the school district is going to act contrary to an order of this Court if we were to determine in an order and opinion that the Pennsylvania busing statute is not preempted by federal law? I think there is some risk. I don't know that it's a significant or a substantial risk, but here's why. This case is an example of what happens when governmental authority goes unchecked. And according to the school district, and you don't figure this out until page 19 of their response brief, they say the reason we stopped providing bus transportation was because the Commonwealth of Pennsylvania, some unknown bureaucrat in Harrisburg, unidentified, decided to stop reimbursing the school district for that transportation. That wasn't pled before. That wasn't argued in the district court before. It wasn't argued in the principal brief in this court before. It's just stated as an undisputed fact in the response brief as some explanation or excuse for the school district's behavior. So the school district is conceding that its decision wasn't based on a change in the law. It wasn't based on a change in the school district's understanding of the law. It was simply based on the fact that somebody decided that they weren't going to pay the school district for something the school district was obligated by statute to do regardless of whether they got paid. So the concern of this court should be is what other excuses will the school district come up with? And I don't know what that's going to be. So the reason why this court should issue an injunction or rename this matter with instructions is to prevent that kind of imaginative dominance that's beyond the legislative scope. It's beyond the review of this court until another lawsuit is filed. Judge Schwab issued his decision in March of last year. It's ten months. If the academy is required to bring another lawsuit, that's another year and a half. It's much simpler for this court to declare that an injunction should issue, again, either from this court or from the district court, and therefore the matter is settled once and for all. But you're asking us to direct the district court to issue an injunction that they forever need to provide busing. What if the law changes? The only argument here is we want to withhold busing under this preemption theory. Maybe some other legal theory will come up. So how would the district court craft the injunction? Well, if the statute changes, obviously the injunction may not still be effective. If there is some reason, as I think it was Judge Hardiman who said, really the school district's remedy in this case is go to the state legislature and say, regardless of what Section 1361 says now, what you ought to do is say that it does not apply to F-1 visa students. So until the legislature takes some action, whenever that might be, the injunction should remain in effect. And is the injunction you're seeking, because looking at your complaint, you have count one is, or A count is the mandatory injunction, then you have subrogation, then you have a 1983 claim. Correct. In looking at the injunctions or remedies, are you seeking an injunction as a remedy to a violation of the busing statute, or are you seeking an injunction as a remedy to an alleged violation of 1983? I was trying to figure out what legal cause of action you're linking your remedy to. The purpose of the injunction, or the reason why the subrogation count was put in the complaint, was because the academy had to fund the transportation out of its own pocket, because the school district was not providing. So that was a common law subrogation? Correct. Okay, then count three. To make sure, just to go back to the injunction for a second, to make sure that we didn't have to keep filing a lawsuit every year to get paid every year, because the cost of the transportation may change each year. We wanted an injunction so the school district would go back to keep doing what it had been doing for the last six or seven years. But you entered into a stipulation that said that you agreed to an award of the $29,000, correct? On count two, sure. With regard to the expenses for that particular school year, which would have been 2016-2017. All right. Did you also stipulate that all of your claims are controlled by the legal issue raised in the district's motion to dismiss? That included the Section 1983 claim. So we were not, the stipulation did not waive it. I think that was a yes or no question. Did you stipulate that all of your claims are controlled by the legal issue raised in the district's motion to dismiss? I don't remember. Okay. Check the appendix on page 58. Okay. Unless I'm mistaken on that, you did. Okay. But correct me if I'm wrong. And the Academy's claims, as I understand it, include both the injunctive relief and the due process counts, but the legal issue raised in the motion to dismiss refers to the preemption issue. So it seems that when the district court ruled in your favor on the preemption issue, it gave you all the relief that you had requested consistent with the stipulation. I don't need the stipulation that way. Why not? The school district filed a motion to dismiss as to all three causes of action. All three causes of action. Based on one issue, right? Preemption. Right. And you wanted the preemption issue. Right. But if we prevailed on the preemption issue, then we also prevailed on the other two issues because they are related. Because the allegation in the complaint was that there is a property right in the bus transportation as set forth in section 1361. So you consider yourself a prevailing party on all three issues because they're preemption defense related to all three claims. Correct. Okay. But why would we decide that in the first instance when the district court said nothing about the due process claim? It seems like a classic obligation on this court's part to vacate and remand with respect to that. If there were allegedly factual issues that the district court would need to decide in order to explain its entry in summary judgment, then I think you're correct. It should go back to the district court. But in this case, what would that look like? Let's assume, just for the sake of argument, that you went on the preemption, you lose on the injunction, and we send it back on 1983. What's going to happen? What work is left for the district court to do? I mean, you've got a commitment on the record here that they have to pay you for the busing. You've got a court order of a district court and, hypothetically, an appellate court saying the same thing. What's left to do? What's left to do is for the district court to look at the present record, declare that there is a property right in bus transportation, and declare that the property right was deprived without due process because it's undisputed that there was no predetermination, hearing, or adjudication before the property right was taken away. Whose property right is it? It's the property right in the student's to receive it. There are plaintiffs in the case. Are you going to litigate that 1983 claim as a plaintiff, a private school plaintiff, under some sort of third-party beneficiary argument? It's third-party and associational standing, Your Honor. If you look at, and we actually put the facts in the complaint, it's pages 44 and 45 of the record, paragraphs 35, 36, and perhaps 35 and 36 primarily. It says the academy has authority to bring this lawsuit on behalf of the students because of the impediments of the parents of the students have in bringing the lawsuit on their own behalf. In particular, the parents of the students reside in the following four countries, China, Serbia, Egypt, Vietnam, Italy, Korea, etc. Under those facts, the academy satisfies the standard of associational standing and, in fact, can pursue the Section 1983 claim on behalf of the students. The school district has never contended that the academy doesn't have standing to bring this lawsuit on behalf of the students. And what was this pre-termination process, or the absence of it, what pre-termination process do you contend your client should have received before the busing ended? Because I think what Judge Hardiman is driving at is what kind of factual record would get developed? What would you deduce to the district court? Because nothing in the record speaks to that yet. What the school district should have done, under the facts as they allege happened, was provide notice to the academy and the students that say, the Commonwealth of Pennsylvania has decided not to fund your busing any longer. So we are not going to provide busing services for your students unless you can give us a reason why. And we're giving you a month, 30 days, whatever, to provide those reasons why we're obligated to continue the busing. And if we don't hear from you, or if we're not satisfied with your answers, then we're not going to provide busing for the next school year and subsequent school years. That at least gives the academy and the students notice and an opportunity to be heard. Instead, what happened was, as we didn't want to attach to the complaint, less than six days before the start of the school year, the school district said, hey, we're not going to provide busing anymore, you have to pay for it, and it's $765 a student without any explanation as to how that sum was arrived at. Quite frankly, I think the school district was trying to turn the busing into a profit center. Because the academy was able to provide busing for students at less than half that cost. So, again, there was no pre-determination adjudication by the school district, no notice, and an opportunity to be heard. Is the academy satisfied with the current arrangement where they're being reimbursed for the cost of providing transportation, but they contract to provide the transportation? Quite frankly, your honor, we'd like the school district to be with transportation. We don't have the staff to take care of the transportation and the obligation, they do. They have a transportation department, they have all the contacts in Harrisburg. So, we'd much prefer that they actually took over the transportation again like the law requires them to do. This arrangement where the academy students would rather ride in the big yellow buses than the sedans and wagons that are being transported in now? Quite frankly, I think they're being transported in school buses anyway. Oh, they are? I think the academy acquired two school buses and transported them. You got into the business yourself, you're not hiring a third-party vendor to transport the students? We hired an independent contractor, I believe, to drive the bus. But you own the bus? Yes, I believe that. That's very entrepreneurial. That's probably why it's half as expensive as the state-provided bus. You want to torch that very rational arrangement? One of the reasons why the academy had buses of its own is that it needs to transport these students after school hours, games, the grocery store, no-brick mall, all that fun stuff. That's really all I have. That makes it even more reasonable that you keep doing what you're doing, because you can lay off the marginal cost of the buses on the school district for their state obligation under the busing statute. Well, that was the arrangement that existed for the last six or seven years. Ah, okay, so right now what's going on is the same as it ever was, it's just that they stopped paying you. No, before, for six or seven years, the school district raided the busing during the day, like the law requires them to do. Okay. They transported the Mercyhurst kids the same way they transported local parochial school kids, et cetera, et cetera. Absolutely, it's the same thing. But that's not what's happening now. Correct. Okay. Thank you, Your Honor. Thank you.  We'll hear Mr. Baumann on rebuttal. Mr. Baumann, could you address Judge VanAske's question about the remand? I mean, there's no record here, right, on 1983. I mean, wouldn't there have to be a full-blown hearing in front of the district court about whether the school has standing, whether the students should be bringing a case on their own initiative, who owns the property right, is there a property right, what's the scope of the property right? Right. Counsel kept referring to undisputed facts. I mean, there are allegations. I mean, we responded with a Rule 12 motion with a legal defense. We've not even had an opportunity to raise the factual defenses. I think we understand that. How do you deal with Mr. Pendleton's argument that the stipulation encompassed your motion to dismiss, which was a Rule 12 preemption argument, and that that preemption argument was an attack on all three of his causes of action? I don't think that because they prevailed at the district court on that preemption issue that it necessarily gets him to a win on 1983 claim. I agree with you on that, but how does it get you to win? I'm asking you to tell us why we shouldn't just remand the 1983 claim. Because I think that the stipulation, I think, sets forth the relief that he's entitled to, that it does sort of frame the issue at summary judgment, and that the monetary relief that is to be paid should encompass those claims and that it's going to be controlled by that issue. And so I don't think there is a preservation of that right to go forward with the 1983 claim. So I think the court just said the parties have stipulated this is the relief that in the event the academy prevails, this is the relief they're going to get. I'm going to find that preemption does not apply, and therefore I don't need to address those issues. Is there any ambiguity there? Is there some virtue in asking the district, at least sending it back to the district court, to clarify whether it intended that to be the end of the case or whether it just seemed a little hard for us to determine exactly what was going on with respect to the 1983 claim? I would agree it's not entirely clear, but I think that the court was satisfied that the relief that it was providing the academy encompassed all of the relief that it was entitled to under the record as it existed at that point in time. So is your position that because the only relief sought, from your point of view, was damages, and damages were awarded, therefore there's nothing more that the plaintiff could achieve by having his 1983 claim be adjudicated to its merits? I think you can fairly infer that from the record, that the judge was saying by entering this relief, I am granting all of the relief that the academy could ever be entitled to under the set of facts in this record, Except we know if they win under 1983, they get attorney's fees. Potentially. Automatically, right? If they win under 1983, how do they not get attorney's fees if they win under 1983? I still think it's subject to a hearing, and this is a novel issue. It's mandatory for prevailing parties, right? Potentially, I think there's still a difference that can be raised there. They would have to prevail on the claim, and I think there's still a defense to be available to oppose. I guess what I'm asking is, clearly they prevailed in the district court because they got an award of $29,000. It appears from the record, as I understand it, that that award was on the subrogation claim, right? I think that's where the calculation of the damages came from. So there doesn't appear to be any award, one way or the other, on the 1983 claim? I don't think the order contains language to that effect, no. Just one quick question. If you do not prevail on the preemption issue, does the school district go back to the Pennsylvania Department of Education and say, hey, reimburse us for these transportation expenses? I expect that they would, yes, and I believe they did. I'm not sure what the outcome of that is. But on the preemption issue, if I could, if I could just make one point, again, under the analysis requires that you ascertain a federal purpose throughout the entirety of the statute, and I think under 1184, I think what the Academy is suggesting is that if, and I recognize that there's no provision for the payment of transportation costs if they attend a private school, but if I think that you can fairly infer that's because Congress did not anticipate this hybrid type of situation where you have the private school with publicly subsidized transportation. And so if you're reading through that thread of the statutes and the regulations that we've cited, if Congress had been presented with that hybrid situation at the time it wrote that law, do we really think it's a fair presumption that Congress would have carved out an exception for students who attend private school to allow them to depend on public resources for public transportation, or do we think it's a more reasonable interpretation that Congress would say, well, wait a second, if you're going to private school but you're going to depend on some level of public resource as a component of that educational cost, that needs to be excluded as well. And I think that latter scenario is a far more likely scenario, and I think it's entirely consistent with the statutes and regulations that we've cited to you with the way that they are drafted. And so to me, the language in 1184, and I'm not going to belabor the point that I raised in my opening segment, but that language to me is quite telling and I think quite indicative of Congress's intent to ensure that, at least insofar as it relates to the educational component, that the F-1 visa students do not rely on public resources to help subsidize that expense. Thank you, Mr. Bowen. Thank you to all counsel for the argument. We'll take the matter under advisement.